# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMES JARVIS, | : | |
| | : | |
| PLAINTIFF, | : | C.A. No.: |
| | : | |
| Vs. | : | JURY TRIAL DEMANDED |
| | : | |
| , | : | |
| | : | |
| TROOPER JOSHUA CARY, | : | |
| IN HIS INDIVIDUAL CAPACITY | : | |
| | : | |
| DEFENDANT. | : | |

## COMPLAINT

**COMES NOW,** Plaintiff, James Jarvis, by and through his undersigned attorney, Ronald G. Poliquin, Esquire, and states as follows:

## THE PARTIES

1. Plaintiff, James Jarvis ("Jarvis") at all relevant times, was in the custody and control of the Delaware State Police ("State Police").

2. Defendant, Trooper Joshua Cary, at all times pertinent to this complaint, was employed as a police officer at Troop 3 of the Delaware State Police by the State of Delaware.  Accordingly, at all times relevant, he was acting under color of state law.

## JURISDICTION

3. The United States District Court for the District of Delaware has jurisdiction over the parties and claims by virtue of the pendency of a federal claim under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343, and under the principles of ancillary and pendent jurisdiction as well as supplemental jurisdiction provisions of 28 U.S.C. § 1367.

## CHRONOLOGY OF MR. JARVIS'S CONDITION

4. James Jarvis is a 63 year old male with a history of ischemic/valvular cardiomyopathy with heart failure symptoms. In addition to a history of hyperlipidemia, atrial fibrillation, and hypothyroidism.

5. Jarvis has suffered two heart attacks and undergone AVR and Hemi-arch replacement in 2005 and stemology for mitral valve replacement combined with coronary artery bypass graft in 2012.

6. Mr. Jarvis suffers from chronic kidney disease, hypertension and anemia of renal disease.

## TROOPER CARY ARRESTS JARVIS

7. On January 31, 2016, Trooper Joshua Cary of the Delaware State Police had a run in with James Jarvis while at his residence of 700 Proctors Purchase Road in Hartly, Delaware.

8. Jarvis called 911 because his roommate threatened to illegally evict him.

9. Upon arrival, Trooper Joshua Cary was openly hostile to Jarvis and accused him of drinking alcohol.

10. Trooper Joshua Cary commanded Jarvis sit down to take a PBT breathalyzer test even though Jarvis was at home at the time and legally allowed to drink alcohol.

11. Trooper Cary threated to arrest Jarvis if he refused to take the breathalyzer test. There was no legal justification to arrest Jarvis for such a refusal.

12. After the encounter, Jarvis complained about Trooper Joshua Cary's conduct to Sgt. Danielle Ramenter.

13. Ramenter and Lt. Solchenke met with Jarvis and said they would speak to Trooper Joshua Cary about his conduct.

14. On December 31, 2016, Jarvis was assaulted by a roommate, Jason Lockwood who struck Jarvis in the face, chest, ribs, arms and legs.

15. At trial, Trooper Cary testified that Lockwood told him that he struck Jarvis.

16. At trial, Trooper Cary testified that he viewed blood outside of Jarvis' door.

17. At trial, witnesses testified that Jarvis was bleeding heavily after the attack.

18. The attack on Jarvis came after Lockwood thought Jarvis was making too much noise.

19. At the time of the incident, Jarvis was currently waiting for a heart transplant.

20. Trooper Joshua Cary of the Delaware State Police was called to investigate the incident.

21. Upon seeing him, Trooper Joshua Cary greeted a bloodied James Jarvis by saying, "we meet again…". It was obvious that Cary held animosity against Jarvis for his prior complaint about Cary's conduct.

22. Jarvis was bleeding profusely as a result of the assault.

23. At trial, Trooper Cary acknowledged that Jarvis notified him of his health issues and heart condition.

24. At trial, Trooper Cary acknowledged seeing all the medications Jarvis was prescribed at the time of incident.

25. Jarvis attempted to show Trooper Joshua Cary his injuries, however, Trooper Cary refused, instead saying Jarvis had no injuries to look at.

26. Rather than transport Jarvis to the emergency room, Trooper Joshua Cary transported Jarvis to Delaware State Police Troop 3 barracks for processing of an arrest warrant and presentation to a magistrate.

27. While being transported and at the barracks, Jarvis was bleeding profusely and covered in blood.

28. Jarvis suffered face, chest and scalp contusions, a head injury and concussion, and a cut on his hand.

29. At trial, Trooper Cary acknowledged that Jarvis was complaining of chest pains and shortness of breath while being transported to the police station.

30. Jarvis continually complained to Trooper Joshua Cary about chest pains, shortness of breath, and informed Trooper Joshua Cary that his heart was working at only 17% of its capacity.  Cary acknowledged Jarvis making these statements at trial.

31. Throughout being transported and while at Delaware State Police Troop 3, Jarvis repeatedly made requests to be taken to the hospital.

### JARVIS CALLS 911 AND TRANSPORTED TO EMERGENCY ROOM

32. Fearing for his life , Jarvis called 911 with his cell phone.

33. Jarvis estimates that he remained at Delaware State Police Troop 3 for 2 hours before finally being transported to Kent General Hospital by officers.

34. Jarvis received treatment at Kent General Hospital and was treated for atypical chest pain, chest pain, pleurodynia, face, chest and scalp contusions, a head injury, and other related and possibly pre-existing conditions. He was given a CT Scan due to chest pain.

35. On January 16, 2017, Jarvis was seen at the Penn Medicine Heart and Vascular Center Heart Failure/Transplant Program as part of his ongoing follow up for heart failure or ischemic cardiomyopathy. The "significant altercation" of December 31, 2016 was evaluated. Doctors noted that they have "maximized his medical therapy," and that "advanced therapies" would likely be needed in the future.

36. In March of 2017, Jarvis was seen at Kent General Hospital for chest pain. A CT Scan was performed at that time.

37. On approximately March 1, 2017, Jarvis was seen again at Penn Medicine Heart and Vascular at which time the March 2017 Kent General Hospital CT Scan was reviewed. A new CT Scan was also performed. Based on these CT Scans, Penn Medicine doctors discovered an upper aortic aneurysm.

38. On March 15, 2018, Jarvis met with surgeons at Penn Medicine to discuss options including a heart transplant or placement of stents.

## COUNT I – 42 U.S.C. § 1983
### (AGAINST DEFENDANT TROOPER JOSHUA CARY)

39. Plaintiff reincorporates all preceding allegations as though they are fully stated in this Count.

40. The Supreme Court has ruled that the Eighth Amendment of the United States Constitution requires prisoners and others in police custody, to be provided with adequate medical care.

41. Here, Jarvis continually informed Trooper Joshua Cary of his past medical history including his serious heart condition and his need to get immediate medical attention.

42. In addition, Jarvis was covered in blood and had injuries that were apparent to Trooper Joshua Cary at the time of his arrest.

43. Trooper Joshua Cary continually disregarded Jarvis' medical issues which caused him harm including continuous and significant pain and suffering,

44. The actions of Defendant Trooper Joshua Cary was committed intentionally, recklessly, and/or with deliberate indifference to Jarvis' known medical need for prompt medical treatment.  These actions violated the prohibitions of cruel and unusual punishment under the Eighth Amendment to the United States Constitution and Article I, Section 11 of the Delaware Constitution.

45. Jarvis's medical issues were exasperated by the delay and refusal of care and treatment by Trooper Cary.

46. As a direct and proximate result of these intentional, reckless, and/or deliberately indifferent acts, Jarvis suffered the injuries detailed in Paragraphs 1 through 4.

**WHEREFORE,** Jarvis demands judgment against Trooper Joshua Cary such special damages as he can prove, general damages, punitive damages, attorney's fees pursuant to 42 U.S.C. § 1983, costs of the action, and such other relief as the Court deems appropriate.

/S/ RONALD G. POLIQUIN
RONALD G. POLIQUIN, ESQUIRE
Delaware Bar ID 4447
148 South Bradford Street
Dover, Delaware 19904
(302) 734-4766
Attorney for Plaintiff James Jarvis

Date: April 6, 2018